IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

JOHN EDMOND, et al.

:

v.                              : Civil Action No. DKC 2005-2750

:

JUDY NIGH, et al.

:

**MEMORANDUM OPINION**

This case arises from the eviction of Plaintiffs John Edmond and Pamela Lyles from an apartment at 806 Fifth Street, Apartment One, Laurel, Maryland 20707.  The case was transferred from the United States District Court for the District of Columbia to this court after a portion of a motion filed by two of the defendants challenging jurisdiction and venue was granted.  At the time, other aspects of that motion remained pending as did a motion by the third defendant to dismiss or for summary judgment.

Since transfer, additional motions have been filed.  Thus, currently pending are: (1) A motion to dismiss the original complaint by Defendant Edward J. Maher (paper 10); (2) A motion to dismiss the original complaint by Defendants Judy Nigh and Snowden Chase Realty, LLC ("SCR") (paper 14); (3) A motion to dismiss the amended complaint or for summary judgment by Mr. Maher (papers 20 and 25); (4) A motion to dismiss the amended complaint by Ms. Nigh and SCR (paper 30); (5) A motion for sanctions against Ms. Nigh and SCR by Plaintiffs (paper 42); (6) A motion for entry of default against all Defendants by Plaintiffs (paper 43); and (7) A motion

to compel discovery and for sanctions against all Defendants by Plaintiffs (paper 45).  The issues are briefed fully and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the motions to dismiss the original complaint and the amended complaint by Ms. Nigh and SCR, and the motion to dismiss the amended complaint or for summary judgment by Mr. Maher will be granted.  Mr. Maher's motion to dismiss the original complaint, and Plaintiffs' motions for sanctions against Ms. Nigh and SCR, for entry of default against all Defendants, and to compel discovery and for sanctions against all Defendants will be denied.

## I.  Service on Judy Nigh and Snowden Chase Realty, LLC

In their motion filed prior to transfer, Ms. Nigh and SCR asserted pursuant to Fed.R.Civ.P. 4 (e),(h), and (m), 12(b)(1), (2), (3), (4) and (5) that they had not been served with the complaint, more than 120 days had passed, and the court in the District of Columbia lacked jurisdiction because none of the events took place in the District.  As noted above, the case was transferred here because of the lack of venue in the District of Columbia.  Ms. Nigh and SCR continue to assert that they were not properly served either with the initial or the amended complaint. The court agrees.

The only purported service on these Defendants of the original complaint was through certified mail delivery addressed to Edward

Maher, which was signed for by Emma Landau.  Ms. Nigh submitted a declaration stating that neither Mr. Maher nor Ms. Landau were authorized to accept service on behalf of herself or SCR.

Plaintiffs responded by asserting that Ms. Nigh and SCR had been served via certified and registered mail on Edward Maher, signed for by Emma Landau, purportedly an employee of Mr. Maher. They rely on the fact that Mr. Maher signed documents on behalf of Ms. Nigh and SCR in Landlord Tenant court, in support of their argument that service on Mr. Maher's employee, Ms. Landau, was proper.

> Fed.R.Civ.P. 12(b)(5) provides that a motion to dismiss may be based on "insufficiency of service of process."  The requirements for service of process are set forth in Fed.R.Civ.P. 4.  Rule 4(e)(1) states that service may be effected upon an individual "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State," and Rule 4(h) renders Rule 4(e)(1) equally applicable to service upon corporations.  *See* Rule 4(h) ("service upon a corporation . . . shall be effected: (1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1) . . . .").

*Biktasheva v. Red Square Sports, Inc.*, 366 F.Supp.2d 289, 293 (D.Md. 2005).  Plaintiffs have the burden of establishing that they have properly effected service pursuant to federal rule of civil procedure (4)(e).

3

"An agent must have actual authority to receive service of process." *Hamrick v. Gottlieb,* 416 F.Supp.2d 1, 4 (D.D.C. 2005) (citing *Bulin v. Stein*, 668 A.2d 810, 813-14 (D.C. 1995).  With regard to service on a corporation:

> As specified by Rule 4(h)(1), service may be achieved on a corporation by receipt of service by "'any . . . [agent] authorized by appointment or by law to receive service of process, and if the agent is one authorized by statute to receive service' so as to effectuate service on the corporation." *Baade v. Price*, 175 F.R.D. 403, 404-05 (D.D.C. 1997).

*Flynn v. Pulaski Constr. Co., Inc.*, No. Civ.A. 02-02336, 2006 WL 47304, at *4 (D.D.C. Jan. 6, 2006).  "Therefore, service is sufficient when (a) an agent of the corporation who (b) represents to the process server that she is authorized to receive service is served, and (c) provided that the defendants received actual notice." *Id*.

Plaintiffs simply are incorrect when they assert that an attorney who represents parties in one piece of litigation thereby becomes their agents for service of process in other litigation. Moreover, actual notice cannot substitute for adequate service of process:

> In any event, plaintiff cannot fulfill his burden under Rule 4(h) by showing that defendant had notice of the suit.  While the purpose of service is to give a defendant notice of the claims against it, notice alone "cannot cure an otherwise defective service." *Zen Music, Inc.* [*v. CVS Corp.*, No. 98 CIV 4246(DLC)], 1998 WL 912102, at *2 [(S.D.N.Y.

> Dec. 30, 1998)]; *see also LSJ Investment Co.,
> Inc. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th
> Cir. 1999) (stating that defendant's actual
> knowledge of lawsuit was no substitute for
> proper Rule 4 service of process); *BPA
> Intern., Inc. v. Kingdom of Sweden*, 281
> F.Supp.2d 73, 84 (D.D.C. 2003) ("Actual notice
> does not fulfill the requirements of Rule
> 4(h)(1).").

*Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 3 (D.D.C. 2004).

Accordingly, the original complaint was not properly served on either Ms. Nigh or SCR. Additionally, Plaintiffs did not cure the service defects by mailing a copy of the amended complaint to the attorney for Ms. Nigh and SCR who entered a special appearance for the purpose of contesting the original service, jurisdiction, and venue. *See* 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1146 (3rd ed. 2002) (noting that the service of papers provisions of Rule 5 apply only to parties who have appeared). The motions to dismiss (papers 14 and 30) therefore will be granted and the complaint and amended complaint will be dismissed as to Ms. Nigh and SCR.

## II. Claims against Edward J. Maher

### A. Standard of Review

In his first motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (paper 10), Mr. Maher contended that the initial complaint failed to state a claim against him. In the second motion, to dismiss the amended complaint or for summary judgment (papers 20 and 25), Mr. Maher challenged the amended complaint, again

asserting that it failed to state a claim, but also that he was entitled to summary judgment.

## 1.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal

allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## 2.  Motion for Summary Judgment

A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where the parties present matters outside of the pleadings and the court considers those matters, the motion is treated as one for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.

1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## B. Analysis

The amended complaint alleges that Plaintiffs entered into a written agreement with Ms. Nigh and SCR. After a rental dispute, all three Defendants attempted to obtain eviction orders beginning in 2003. Afterwards, Defendants repeatedly, over a period of 8 months, called upon the Prince George's County Sheriffs' Department to visit Plaintiffs to convince them to leave. Sheriffs' deputies were informed that they had no authority to evict Plaintiffs due to a pending bankruptcy case.

Defendants decided on or about August 9, 2004, to utilize "self Help" to evict Plaintiffs in violation of the landlord/tenant laws of Prince George's County, by enlisting the participation "of two corrupt Prince George's County Maryland Sheriffs who knew that they had no right to evict Plaintiffs because they did not have a signed court order from a judge at the Landlord-Tenant Court."

At 10:00 a.m. on August 9, 2004, two officers knocked on the door of Plaintiffs' residence, Ms. Lyles answered the door, and they told her they were there to evict her. They presented a copy of a court order issued by a bankruptcy judge lifting the automatic stay. Ms. Lyles informed them that they had no authority to enforce the bankruptcy court order. She demanded to see an eviction order, which they said they didn't need. She claims that

both sheriffs assaulted her by pushing her back into the apartment. She was ordered to get dressed, and one of the sheriffs watched. She was escorted to the living room, where five unknown people were picking up her property and taking it to the parking lot, dumping it in a heap, breaking and destroying numerous items.

The sheriffs then led Ms. Lyles to the door and pushed her outside.  Ms. Nigh supervised locksmiths as the locks were changed. When Ms. Lyles started to use her cell phone, Ms. Nigh and SCR and both sheriffs disappeared, leaving Ms. Lyles standing near her belongings.

When Mr. Edmond returned to the apartment he telephoned Mr. Maher "who had always represented himself as Defendant Nigh's attorney."  He refused to help.

Plaintiffs' amended complaint is far from a model of clarity. Nevertheless, construing it liberally, it appears that Plaintiffs assert the following claims against Mr. Maher.  Plaintiffs allege that the Defendants engaged in a "RICO conspiracy" and conspired in a pattern of racketeering, that Mr. Maher "is guilty under the criminal code for 'misprision' for his participation in and failure to disclose the crimes of the Defendants under 18 U.S.C. § 4," and that Defendants "are guilty of violating 18 U.S.C. § 241 and 242 by conspiring to injure, oppress, threaten and intimidate the Plaintiffs because . . . Plaintiffs are African American." Plaintiffs also assert that Defendants violated "Section 8(402) of

the Maryland Code which requires landlords and sheriffs to serve a summons upon and an [sic] opportunity to challenge in court proceedings, notify tenants prior to eviction, and affixing [sic] a notice upon the door of the dwelling prior to an eviction." Finally, although it is not entirely clear, Plaintiffs also appear to assert a state law conspiracy claim against all Defendants, as well as a claim of intentional infliction of emotional distress based on Defendants' "outrageous, deliberate misconduct" that was "extreme and malicious."

**1.  Motion to Dismiss**

**a.  RICO Claims**

As noted, Plaintiffs allege in the amended complaint that Defendants engaged in a "RICO conspiracy" and "conspired in a pattern of racketeering."  In order to succeed on a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1692, a plaintiff must show, among other things, that the defendant was involved in a pattern of racketeering activity. Racketeering activity is defined under 18 U.S.C. § 1961(1), and includes, among other things, acts or threats involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical, as well as a number of acts which are indictable under the United States Code.  A "pattern of racketeering activity" is statutorily defined and "requires at least two acts of racketeering

activity, one of which occurred within ten years (excluding any period of imprisonment) after the commission of the prior act of racketeering activity."  18 U.S.C. § 1961(5).

Plaintiffs state in the amended complaint that "Defendants embarked on a criminal RICO conspiracy to illegally evict the Plaintiffs without any notice whatsoever in flagrant disregard of Section 8(402) of the Maryland Landlord-Tenant Code."  Even assuming Plaintiffs alleged facts sufficient to implicate Mr. Maher in the alleged illegal eviction and that this conduct constituted racketeering activity pursuant to § 1961, Plaintiffs' RICO claims still are deficient because Plaintiffs do not allege facts sufficient to show a *pattern* of racketeering activity.  To prove a pattern, a plaintiff is required to show that the predicate acts are (1) related and (2) that "they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 339 (1989).  Acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.  *Id*. at 239-40.  The Fourth Circuit has provided some guidance on the continuity element:

> Continuity . . . refers "either to a closed
> period of *repeated* conduct, or to past conduct
> that by its nature projects into the future
> with a threat of *repetition*." [*H.J. Inc.*, 492
> U.S. at 242] (emphasis added).  To satisfy the
> continuity element, a plaintiff must show that

> "the predicates themselves amount to, or . . .
> otherwise constitute a threat of, *continuing*
> racketeering activity." *Id.* at [240]
> (emphasis in original). Significantly,
> "[p]redicate acts extending over a few weeks
> or months and threatening no future criminal
> conduct do not satisfy this requirement:
> Congress was concerned in RICO with long-term
> criminal conduct." *Id.* at [242]. . . . Thus,
> predicate acts must be part of a prolonged
> criminal endeavor.

*Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683-84 (4th Cir. 1989).

The Fourth Circuit has interpreted the pattern requirement strictly. In *Menasco*, the court noted:

> The pattern requirement in § 1961(5) thus acts
> to ensure that RICO's extraordinary remedy
> does not threaten the ordinary run of
> commercial transactions; that treble damage
> suits are not brought against isolated
> offenders for their harassment and settlement
> value; and that the multiple state and federal
> laws bearing on transactions such as this one
> are not eclipsed or preempted.

*Menasco*, 886 F.2d at 683. The court in *Menasco* held that the fraud at issue in that case did not satisfy the pattern requirement where there was a limited purpose to defraud two parties, there was one perpetrator, and the alleged acts took place over the course of one year. *Id.* at 684. The court concluded:

> Clearly, these acts do not constitute "ongoing
> unlawful activities whose scope and
> persistence pose a special threat to social
> well-being." [*Int'l Data Bank Ltd. v.*] *Zepkin*,
> 812 F.2d [149,] at 155 [(4th Cir. 1987)]. . .
> . If the pattern requirement has any force
> whatsoever, it is to prevent this type of
> ordinary commercial fraud from being
> transformed into a federal RICO claim. . . .
> If we were to recognize a RICO claim based on

> the narrow fraud alleged here, the pattern
> requirement would be rendered meaningless.

*Menasco*, 886 F.2d at 684-85.  The factual allegations in this case involve a single scheme to evict Plaintiffs.  This alone is insufficient to satisfy the pattern requirement of RICO. Accordingly, Mr. Maher's motion to dismiss the RICO claim will be granted.

**b.  Misprision of Felony**

Plaintiffs allege in the amended complaint that Mr. Maher is "guilty under the criminal code for 'misprision' for his participation in and failure to disclose the crimes of Defendants under 18 U.S.C. § 4."

The statute provides:

> Whoever, having knowledge of the actual
> commission of a felony cognizable by a court
> of the United States, conceals and does not as
> soon as possible make known the same to some
> judge or other person in civil or military
> authority under the United States, shall be
> fined under this title or imprisoned not more
> than three years, or both.

18 U.S.C. § 4.  As Mr. Maher correctly asserts, this statute defines a criminal offense and does not provide a private cause of action.  *See Pankey v. Webster*, 816 F.Supp. 553, 559 (W.D.Mo. 1993); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D.N.Y. 1985). Accordingly, Mr. Maher's motion to dismiss will be granted.

**c.  Civil Rights Claims**

As noted, Plaintiffs allege in the amended complaint, that Defendants violated 18 U.S.C. §§ 241 and 242 "by conspiring to injure, oppress, threaten and intimidate the Plaintiffs because . . . Plaintiffs are African American."  Sections 241 and 242 of title 18 are criminal statutes, and neither provides a private right of action. *See Powers v. Karen*, 768 F.Supp. 46, 51 (E.D.N.Y. 1991), *aff'd* 963 F.2d 1522 (2nd Cir. 1992); *Lundt v. Hodges*, 627 F.Supp. 373, 375-76 (N.D.Iowa 1985).  Moreover, even assuming Plaintiffs intended to assert a civil rights claim pursuant to 42 U.S.C. § 1983, Plaintiffs claim fails because Mr. Maher is not a state actor and any alleged actions by him were not taken "under color of law." *Fleming v. Asbill*, 42 F.3d 886, 890 (4th Cir. 1994) ("Private lawyers do not act 'under color of state law' merely by making use of the state's court system."). *See also Polk County v. Dodson*, 454 U.S. 312, 322-323 n.13 (stating that a public defender's actions in defending a client were private even though she was employed by the county and was acting within the scope of her job as a public defender).  Accordingly, Mr. Maher's motion to dismiss the civil rights claims will be granted.

**d.  Violation of Section 8(402)**

Although Mr. Maher does not construe the amended complaint to state a claim against him pursuant to Maryland real property law, it appears that Plaintiffs allege that Defendants, including Mr.

Maher, violated "Section 8(402) of the Maryland Code which requires landlords and sheriffs to serve a summons upon and an opportunity to challenge in court proceedings, notify tenants prior to eviction, and affixing a notice upon the door of the dwelling prior to an eviction."

Plaintiffs seem to be referring to Md. Code Ann., Real Prop. § 8-402.1, which relates to breaches of leases and specifies procedures for landlord repossession of property.[1]   Plaintiffs allege no facts showing that this provision is in any way applicable to Mr. Maher.   Plaintiffs do not allege that Mr. Maher was involved in the actual eviction of Plaintiffs.   Moreover, § 8-402.1 does not establish any duty on the part of a landlord's attorney (i.e., Mr. Maher) to stop an eviction.   Accordingly, even if Plaintiffs allege a claim against Mr. Maher pursuant to this statutory provision, it properly is dismissed.

## 2.   Motion for Summary Judgment

Because the court will consider matters outside of the pleadings in addressing the remaining claims alleged in the amended complaint, the remainder of Mr. Maher's motion is treated as one for summary judgment.   *See* Fed.R.Civ.P. 12(b), 56; *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

---

[1] Md. Code Ann., Real Prop. § 8-402, titled, "Holding over," does not appear to be relevant to Plaintiff's claim.

According to his declaration, Edward Maher was retained by Ms. Nigh and SCR to prosecute eviction proceedings against Plaintiffs who had defaulted on their lease.   He pursued the eviction proceedings, and obtained the eviction order on June 15, 2004, pursuant to which Plaintiffs were evicted on August 10, 2004. Plaintiffs do not maintain that Mr. Maher was present during the eviction.   Instead, Plaintiffs' claims against Mr. Maher appear to be premised on the fact that he assisted Plaintiffs in obtaining an eviction order and, once notified that Ms. Nigh and SCR were evicting Plaintiffs, Mr. Maher did nothing to stop the eviction. For the following reasons, the remaining claims against Mr. Maher also fail.

**a.  Civil Conspiracy**

As noted, Plaintiffs appear to assert a common law claim of conspiracy against Mr. Maher.[2]   Plaintiffs allege that Defendants conspired to illegally evict Plaintiffs.

A civil conspiracy under Maryland law is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal with the further requirement that the act or the means employed must result in damages to the plaintiff." *Yousef v.*

---

[2] It is not entirely clear that Plaintiffs assert a civil conspiracy claim separate from their RICO claim.  Nevertheless, the court will construe Plaintiffs' amended complaint liberally and as asserting a separate conspiracy claim.

*Trustbank Sav., F.S.B.*, 81 Md.App. 527, 538 (1990).   Thus, a "meeting of the minds in an unlawful arrangement" is essential to stating a claim for conspiracy.   *Christian v. Minn. Mining & Mfg. Co.*, 126 F.Supp.2d 951, 959 (D.Md. 2001) (quoting *Elecs. Store, Inc. v. Cellco P'ship*, 127 Md.App. 385, 409, *cert. denied*, 356 Md. 495 (1999)).

Civil conspiracy under Maryland law is "not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 645 n.8 (1994).   Thus, "a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action.   The damage done is the gist of the action, not the conspiracy." *Id.* (quoting *Robertson v. Parks*, 76 Md. 118, 135 (1892)).   In short, "civil conspiracy is a parasite tort--it cannot stand alone." *Kramer v. Mayor & City Council of Baltimore*, 124 Md.App. 616, 642, *cert. denied*, 354 Md. 114 (1999).

Other than their conclusory assertions that Defendants conspired to evict them illegally, Plaintiffs allege no facts showing that Mr. Maher agreed to do anything unlawful.   Mr. Maher stated in his declaration that he was hired to institute legal eviction proceedings against Plaintiffs, which he did.   Even assuming the eviction itself was not conducted pursuant to law, there are no allegations that Mr. Maher had any part in the actual

18

eviction, other than his alleged refusal to help Plaintiffs after Plaintiffs called him to tell him that the eviction had taken place.  Moreover, Plaintiffs do not allege that Mr. Maher's actions were taken for his own personal benefit - all allegations pertaining to Mr. Maher involve actions taken within the scope of his employment as Ms. Nigh and SCR's representative.  Accordingly, there can be no conspiracy between Mr. Maher and his clients.  *See Fraidin v. Weitzman*, 93 Md. App. 168, 234-35 (1992), *cert. denied*, 329 Md. 109 (1993) (noting that "there can be no conspiracy when an attorney acts within the scope of his employment" and that liability as a co-conspirator requires evidence that the attorney's participation involved more than legal representation of his clients); *Harnish v. Herald-Mail Co.*, 264 Md. 326, 337 (1972) ("It is doubtful at the least that an employee of a corporation and that corporation can conspire where the employee is acting only for the corporation and not for any personal purpose of his own.").  Accordingly, Defendants motion for summary judgment on the civil conspiracy claim will be granted.

**b.  Intentional Infliction of Emotional Distress**

With regard to their claim of intentional infliction of emotional distress ("IIED"), Plaintiffs allege that "Defendants' outrageous, deliberate misconduct was designed to intentionally inflict emotional distress upon the Plaintiffs because their conduct was extreme and malicious."  As noted, the only conduct

attributable to Mr. Maher is that he assisted Ms. Nigh and SCR in obtaining an eviction order and failed to help Plaintiffs when they called  to tell him that Ms. Nigh and SCR were evicting them.

In order to state a claim for IIED under Maryland law a plaintiff must show: (1) the defendant's conduct is "intentional or reckless"; (2) the conduct is "extreme and outrageous"; (3) there is a "causal connection between the wrongful conduct and the emotional distress"; and (4) the plaintiff's emotional distress is severe. *Harris v. Jones*, 281 Md. 560, 566 (1977).  The Court of Appeals of Maryland has noted that, with respect to IIED, "recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653 (1991) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, *cert. denied*, 306 Md. 118 (1986)).  The elements of the tort are "rigorous, and difficult to satisfy." *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992); *see Batson v. Shiflett*, 325 Md. 684, 734 (1992) (identifying only three "truly egregious" cases in which IIED claims have been upheld).

Plaintiffs have not alleged any conduct on the part of Mr. Maher that could even remotely be considered extreme and outrageous.  As Mr. Maher stated in his declaration, Ms. Nigh and SCR solicited him to help them obtain a legal eviction order against Plaintiffs.  Moreover, Mr. Maher was under no obligation to

"help" Plaintiffs after they were evicted or to stop the eviction proceedings once they were under way.  His failure to act cannot constitute extreme or outrageous conduct.  Accordingly, Mr. Maher's motion for summary judgment will be granted on the IIED claim.

**III.  Conclusion**

For the foregoing reasons, Ms. Nigh and SCR's motions to dismiss the original and the amended complaints will be granted. Mr. Maher's motion to dismiss or for summary judgment will be granted.  The remaining motions will be denied.  None of the defendants is in default and they were under no obligation to participate in discovery.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge